IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Case No. 05-400-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| EBONIQUE MANUS, | ) | |
| | ) | |
| Defendant. | ) | |

Karin J. Immergut
United States Attorney
District of Oregon
Stephen F. Peifer
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon  97204

Attorneys for Plaintiff

Andrew M. Kohlmetz
Raivio, Kohlmetz & Steen, P.C.
400 S.W. Sixth Avenue, Suite 914
Portland, Oregon

Attorney for Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

Defendant Ebonique Manus has been indicted as a felon in possession of a firearm.

Before the court is a Motion to Suppress Evidence and Statements (# 28) filed by Manus.

## FACTS

The parties did not request an evidentiary hearing. In making their arguments, they relied instead on the search warrant, the affidavit in support of the search warrant, and the hearing transcript in a case before Chief Judge Ancer Haggerty, who suppressed evidence obtained as a result of the very same search warrant with which defendant Manus takes issue. See United States v. Uhuru Navanda Crews, Crim. No. 05-355-HA, Slip Op. 2006 WL 1892599 (D. Or. July 10, 2006). The search warrant was issued to allow police to search Manus' residence, due to the unlawful actions of her boyfriend, Uhuru Navanda Crews, who was seen around Manus' residence and driving Manus' car. Manus was not the target of the search warrant. The government has appealed Judge Haggerty's ruling.

The circumstances preceding the issuance of the search warrant are as follows: Police attempted to pull Uhuru Navanda Crews over on July 2, 2005 when Crews failed to properly signal before turning a corner. Rather than pulling over, Crews increased his speed and then jumped from the moving vehicle. Police followed Crews on foot, lost sight of him briefly, and then arrested him for eluding police. He told the officers he had attempted to evade them due to a warrant for his arrest in Washington, which police later discovered was non-extraditable. Police impounded the car, an Oldsmobile registered in Manus' name at the address of 6731 SE 87th Avenue, Apt. 3. Crews' arrest took place only a few blocks from that address. Crews' driver's license listed a different address as his residence. After a number of searches in the area

where Crews had run, police located a .22 caliber revolver under some shrubs.  Crews had a prior felony drug conviction.

Officers surveilled Manus' apartment complex for two days (July 5 and 6, 2005) since the car Crews was driving was registered in her name.  The first day, an officer saw Crews walk out of the complex driveway to the west side of SE 82nd Avenue.  Later, an officer saw Crews get into the passenger side of a car parked in the parking space reserved for apartment number 3. The next day, police saw Manus walk from the area of apartment 3 and leave in a Pontiac parked in that space.  She returned a short time later.  Another officer saw Crews walking from the complex, and then return to the complex.  Officers could not see if he entered apartment 3. About 45 minutes later, an officer saw Manus and Crews walk together from the area of the doorway to apartment 3, and walk back and forth between the complex and the Pontiac several times.  The two left in the car together, with Crews driving.

The officer related these facts in the affidavit, along with his general knowledge about firearms possession.  The warrant permitted the search of apartment 3 to search for .22 caliber ammunition and other firearms-related evidence, as well as items of identification, for the crimes of felon in possession of a firearm and attempting to elude police.

Crews was arrested for the felon in possession charge.  When he was questioned, he said he did not live at the apartment, but that Manus and her three children did, and that he did not think there were any guns in the apartment.  Police arrested Manus on an unrelated misdemeanor warrant.  Manus said Crews was her boyfriend and he had lived in the apartment with her for about six weeks.  She said there were no guns in the apartment.

Page 3 - OPINION AND ORDER

In executing the search warrant, on July 14, police found a two-shot .38 caliber derringer in a dresser drawer filled with women's underwear in one of the bedrooms.  This is the gun Manus is charged with possessing.  Later that day, Manus waived her <u>Miranda</u> rights and admitted that she kept the gun for protection.

## LEGAL STANDARDS

A search warrant must be supported by probable cause.  The question is whether, viewing the totality of the circumstances, the judicial officer who issued the warrant had a substantial basis for finding that there was a "fair probability that contraband or evidence of a crime" would be found in the place searched.  <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).  The issuing court is entitled to draw reasonable inferences about where evidence may be kept, "based on the nature of the evidence and the type of offense."  <u>United States v. Angulo-Lopez</u>, 791 F.2d 1394, 1399 (9th Cir. 1986).  In "borderline cases, preference will be accorded to warrants and to the decision of the magistrate issuing it."  <u>United States v. Terry</u>, 911 F.2d 272, 275 (9th Cir. 1990).

Even if the warrant is based on insufficient probable cause, the evidence need not be suppressed if the officer relied in good faith on the validity of the warrant, and his reliance was objectively reasonable.  <u>United States v. Leon</u>, 468 U.S. 897, 922 (1984).

## DISCUSSION

I.    <u>Warrant Issues Discussed in Judge Haggerty's Opinion</u>

The crimes at issue are Crews' illegal possession of a .22 caliber revolver (as a convicted felon) and the felony offense of attempt to elude as set forth in ORS 811.540.  Accordingly, the probable cause questions are whether (1) the affidavit established a sufficient nexus between the

apartment and the crime(s) and (2) if there was a "fair probability" of finding evidence of one or both of these crimes at the apartment.

The government argues that there was sufficient evidence to link Crews and the apartment. He was driving an Oldsmobile registered to Manus at the apartment's address. The arrest took place a few blocks from the apartment. Manus lived at the apartment to be searched. Police surveillance established a relationship between Crews and Manus at the apartment complex. As a result, the magistrate could find that Manus and Crews were closely associated with each other, that they shared motor vehicles, that either or both of them possessed further evidence related to the illegal .22 revolver, and that the evidence could be found at the apartment.

Manus argues that there was no basis to believe that the police would find any further evidence of Crews' attempting to elude crime at her apartment. No further evidence was needed–every element to establish the crime was satisfied. In addition, Manus asserts that the affidavit also failed to establish that evidence of Crews' possession of a firearm would be found at her apartment. He had no official association with the address, and no officer saw him enter or leave the apartment. Manus goes on to argue that even if police had seen him enter the apartment, the affidavit would still fail. The officers did not set up surveillance at Crews' listed address, did not indicate how many apartments were in the complex, and waited eight days to execute the search warrant without confirming that Crews was still in the area.

I agree with Judge Haggerty. The judge who granted the search warrant clearly erred in concluding there was a "fair probability that contraband or evidence" of the crime of attempting to elude would be found in Manus' apartment. The elements of attempting to elude police are that the defendant must operate a motor vehicle and knowingly flee or attempt to elude a police

officer who has given a visual or audible signal to stop the vehicle. Here, Crews did not stop his vehicle when the police officers signaled their direction to do so. Rather, he leapt from his car, while it was still moving, and ran away from them. No other evidence of this crime could possibly be discovered through the execution of a search warrant. See United States v. Sartin, 262 F. Supp. 2d 1154, 1158 (D. Or. 2003) ("The police already had ample evidence to secure a conviction" for violation of sex offender registration).

With regard to the crime of felon in possession, the question is whether further evidence of that crime could reasonably be found in Manus' apartment. As Judge Haggerty pointed out, the police saw Crews around Manus' apartment during only two days of surveillance and never saw him enter or leave apartment 3. Additional relevant considerations include the fact that police never attempted surveillance of Crews at the address listed on his driver's license, and never checked with the apartment manager to confirm whether Crews was a tenant of the complex or of apartment 3. The officer did not disclose in the affidavit how many apartments were in the complex, whether Crews spent the night at the apartment, or whether there was any evidence he stored his belongings there.

A suspect's presence at a dwelling not reasonably thought to be his abode, without more, is not sufficient to establish a meaningful relationship between the suspect and the contents of the house. United States v. Curzi, 867 F.2d 36, 46 (1st Cir. 1989) (citing United States v. Bailey, 458 F.2d 408, 412 (9th Cir. 1972)). The affidavit stated only that Crews was driving a car registered to Manus, and that Crews was seen around Manus' apartment during two days of surveillance. There is no evidence that Crews was anything more than a social guest of Manus' who borrowed her car on one occasion. Accordingly, it was unreasonable for the granting judge to conclude

"that the things listed as the objects of the search [were] located in the place to be searched."

United States v. Pitts, 6 F.3d 1366, 1369 (9th Cir. 1993).

II.    Additional Issues

    A.    Staleness

Manus also argues that the information in the affidavit had grown stale by the time it was executed.  The attempt to elude took place on July 2 and the search warrant was not executed until July 14.  A search warrant is timely depending on whether it is reasonable to believe that the items to be seized are still on the property.  United States v. Gann, 732 F.2d 714, 722 (9th Cir. 1991).

The government responds that staleness is determined on a case by case basis.  The government cites a number of cases involving drug and robbery activities in which the court upheld warrants issued weeks or months after the last reported suspicious activity.  The government argues that Manus has cited no case, and it can find none, in which 12 days merits a staleness finding.

This issue is only relevant if the court is wrong in concluding that the judge erred in issuing the search warrant.  The court looks at the circumstances of each case in evaluating staleness.  Pitts, 6 F.3d at 1369.  Here, if it was reasonable to believe that firearms-related evidence would be found at Manus' apartment, there was a sufficient basis to believe that such evidence would still be on the premises on July 14.  Only 12 days had elapsed between Crews' attempting to elude police, and the execution of the search warrant, and only eight days had elapsed between the police surveillance of the apartment complex and the execution of the search

warrant.  This period of time is not long enough to render the information in the search warrant stale.

      B.   <u>Manus' Criminal Record</u>

Manus argues that the officer improperly padded the affidavit when he included Manus' criminal history; according to Manus, her criminal history was irrelevant to any investigation of Crews.  The government responds that Manus' criminal history was relevant since Crews was driving Manus' car when he possessed the gun.  It was important for the magistrate to know that both Crews and Manus were felons who were not permitted to possess firearms.

Manus relies on <u>Sartin</u>, 262 F. Supp. 2d at 1160 for the proposition that the inclusion of such information was superfluous and misleading.  The inclusion of Manus' criminal history does not rise to the level of "irrelevant and sometimes misleading information that makes it difficult to ascertain what crimes were being investigated or evidence sought" as described by the <u>Sartin</u> court.  262 F. Supp. 2d at 1160.  Manus' criminal record says little about Crews' illegal activities, but its inclusion in the affidavit does not substantially distract from the other information the judge is required to consider in deciding whether to grant the search warrant.

III.   <u>Good Faith Exception</u>

As it did in the Crews matter, the government relies on the good faith exception to the requirement that a warrant be supported by probable cause.  The government argues that Judge Haggerty improperly analyzed the good faith exception.  According to the government, the Opinion appears to conclude that because there were probable cause deficiencies, the officer was not reasonable in relying on the warrant.  The government argues that the Opinion is wrong to equate lack of probable cause with lack of good faith.  Rather, the question is whether the

affidavit provides sufficient details that it offers a "hint as to why the police wanted to search this residence." United States v. Hove, 848 F.2d 137, 139-40 (9th Cir. 1988). The government asserts that this was not a "bare bones" affidavit that was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." United States v. Leon, 468 U.S. at 923.

Manus argues that the good faith exception does not apply. Manus states simply that the affidavit was so lacking in probable cause that the officer's reliance on it was not objectively reasonable.

I agree with the government that an affidavit lacking indicia of probable cause does not by definition preclude an officer from reasonably relying on the search warrant. However, here the affidavit so lacked probable cause that the officers were objectively unreasonable in relying on it.

More specifically, officers were not objectively reasonable in relying on the search warrant to find evidence of attempting to elude police. Simply glancing at the elements of the crime would inform an officer that no additional evidence of the crime could possibly be discovered through the execution of a search warrant.

Furthermore, officers were not objectively reasonable in relying on the warrant to find evidence at Manus' apartment that Crews had committed the crime of felon in possession of a firearm. In United States v. Ramos, 923 F.2d 1346, 1354 (9th Cir. 1991), a case on which the government relies heavily, the court found no probable cause to support the search of Ramos' apartment because there was no discussion in the affidavit that evidence of the crime–narcotics offenses–would be found there. Nevertheless, the court applied the good faith exception because

Page 9 - OPINION AND ORDER

the affidavit adequately connected Ramos to the apartment; Ramos was seen driving a van later found to contain drugs, the van was parked at the apartment complex for a few minutes before it was seized, a truck registered to Ramos was parked at the complex, and Ramos' name appeared on a mailbox there.  In contrast, here the officers were not objectively reasonable in relying on the warrant because, as described above, the affidavit "did not link this location to the defendant" Crews.  Id.

Accordingly, I find that the good faith exception does not apply.

## CONCLUSION

For the foregoing reasons, the Motion to Suppress Evidence and Statements (# 28) filed by defendant Manus is granted.  The statements made by Manus, as well as the .38 caliber derringer, must be suppressed.

IT IS SO ORDERED.

Dated this _____18th_____ day of October, 2006.


                    _____/s/ Garr M. King_____
                    Garr M. King
                    United States District Judge